**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000501
29-MAY-2014
08:43 AM**

NO. CAAP-12-0000501

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DUNCAN SUNAHARA, Plaintiff-Appellant,
v.
DEPARTMENT OF HEALTH, STATE OF HAWAI'I, LINDA M. ROSEN,
in her official capacity as Director of the Department
of Health, State of Hawai'i, Defendants-Appellees,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10,
AND DOE GOVERNMENTAL ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-0006)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Reifurth, JJ.)

This case addresses the claim made by Plaintiff-Appellant Duncan Sunahara ("Sunahara") that he was entitled to a "certified copy of the original hospital-generated paper Certificate of Live Birth" (Birth Certificate") for his deceased sister, Virginia Sunahara ("Virginia"). Sunahara appeals from the Final Judgment as to All Claims and All Parties, filed April 20, 2012 ("Judgment"), entered in favor of Defendants-Appellees Department of Health, State of Hawai'i and Linda M. Rosen in her official capacity as Director of the Department of Health,[1] State of Hawai'i (collectively, "DOH") by the Circuit

---

[1]    During the pendency of this appeal, Linda M. Rosen was appointed as Director, Department of Health, State of Hawai'i, and has been substituted as a party to this appeal pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c) (2010).

Court of the First Circuit ("Circuit Court").[2/]

On appeal, Sunahara alleges that: (1) the Circuit Court erred in granting summary judgment in favor of DOH because Sunahara is entitled to a certified copy of Virginia's original Birth Certificate, pursuant to Hawaii Revised Statutes ("HRS") §§ 338-13(a)[3/] and 92F-11[4/]; (2) the Circuit Court's interpretation of HRS § 338-13(a) and Chapter 8B was erroneous; and (3) the Circuit Court erred in denying Sunahara the right to inspect and obtain the Birth Certificate pursuant to Chapter 92F.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we affirm the Judgment and address Sunahara's points as follows:

(1) Sunahara alleges that DOH did not comply with HRS § 338-13(a) when it issued the Abstract.

> § 338-13 Certified copies. (a) Subject to the requirements of sections 338-16, 338-17, and 338-18, [5/] the department of health shall, upon request, furnish to any applicant a certified copy of any certificate, *or the contents of any certificate, or any part thereof.*
>
> (b) Copies of the contents of any certificate on file in the department, certified by the department shall be considered for all purposes the same as the original, subject to the requirements of sections 338-16, 338-17 and 338-18.
>
> (c) Copies may be made by photography, dry copy reproduction, typing, computer printout or other process approved by the director of health.

HAW. REV. STAT. § 338-13 (2010) (emphases added).

Sunahara first contends that, under the plain meaning of the statute, he was entitled to a "certified copy of any certificate." HAW. REV. STAT. § 338-13(a). Not unreasonably, he

---

[2/]    The Honorable Rhonda A. Nishimura presided.

[3/]    "Subject to the requirements of sections 338-16, 338-17, and 338-18, the department of health shall, upon request, furnish to any applicant a certified copy of any certificate, or the contents of any certificate, or any part thereof." HAW. REV. STAT. § 338-13(a) (2010).

[4/]    "All government records are open to public inspection unless access is restricted or closed by law." HAW. REV. STAT. § 92F-11(a).

[5/]    HRS § 338-18(b) states that to inspect a record, a person must have a "direct and tangible interest in the record." Sunahara has a "direct and tangible interest" because he has a "common ancestor" with Virginia. HAW. REV. STAT. § 338-18(b)(5) (2010).

2

reads the words "any certificate" to include the Birth Certificate. HRS § 338-13 also states that DOH *"shall"* take action upon request, and thus it is mandatory that DOH respond to an applicant's proper request for a certificate. *Id.* (emphasis added).

Sunahara's "plain language" argument fails, however, because HRS § 338-13(a) affords DOH three alternate ways to satisfy its obligation to provide a certified copy. DOH must furnish to any applicant "[(1)] a certified copy of any certificate, or [(2)] the contents of any certificate, or [(3)] any part thereof." *Id.* Each of the options is separated by the word "or". *Id.*

The common usage of "or" is "disjunctive, indicating an alternative" and it "usually connects words or phrases of different meanings permitting a choice of either." *State v. Kalani*, 108 Hawai'i 279, 284, 118 P.3d 1222, 1227 (2005) (quoting *State v. Sorenson*, 44 Hawai'i 601, 604, 359 P.2d 289, 291 (1961) (internal quotation marks omitted)). Therefore, under the plain language of HRS § 338-13, Sunahara is not entitled to a "certified copy of any certificate[.]" Instead, his request may be satisfied by one of multiple means, including an abstract of the contents of any certificate. HAW. REV. STAT. § 338-13(a).

Sunahara argues that the disjunctive "or" in HRS § 338-13(a) should be read as "and" because "[e]ach of the terms 'or' and 'and', has the meaning of the other or of both." HAW. REV. STAT. § 1-18 (2009). However, in addressing HRS § 1-18, the Hawai'i Supreme Court has explained that "[t]he sense of a word [(disjunctive or conjunctive)] which harmonizes best with the whole context of the statute and promotes in the fullest manner the apparent policy and objects of the legislature must be adopted." *In re City & Cnty. of Honolulu Corp. Counsel*, 54 Haw. 356, 374, 507 P.2d 169, 178 (1973) (citing *Samuel Mahelona Memorial Hospital v. Cnty. of Kauai*, 46 Haw. 260, 377 P.2d 703 (1962)). In this case, the legislative history of HRS § 338-13(a) indicates that the legislature added options to HRS § 338-13(a) in order to allow DOH increased flexibility to save time and money. *See* Conf. Comm. Rep. No. 10, in 1978 House Journal,

at 1260; Conf. Comm. Rep. No. 21-78, in 1978 Senate Journal, at 758. Thus, Sunahara's interpretation of "or" as meaning "and", which would require DOH to provide him with all three types of documents listed in HRS § 338-13(a), is inconsistent with the legislative objectives, and is therefore not an appropriate construction of the statute.

The statute does not explain, however, who is to determine which of the three alternative documents is to be provided. To that extent, the statute is ambiguous. *Riethbrock*, 128 Hawai'i at 11, 282 P.3d at 553. When a statute is ambiguous, "a court's 'primary objective is to ascertain and give effect to legislative intention.'" *Neumann v. Ramil*, 6 Haw. App. 377, 383-84, 722 P.2d 1048, 1053 (1986) (quoting *Puchert v. Agsalud*, 67 Haw. 25, 34, 677 P.2d 449, 456 (1984)).

In 1978, the legislature amended HRS § 338-13(a) to include the phrase, "or the contents of any certificate." 1978 Haw. Sess. Laws Act 49, § 1 at 62. The Conference Committee Report stated that the "purpose of this bill is to enable the Department of Health to issue certified copies of vital records *by whatever system appears simplest and least expensive in cost and clerical time*." Conf. Comm. Rep. No. 10, in 1978 House Journal, at 1260; Conf. Comm. Rep. No. 21-78, in 1978 Senate Journal, at 758 (emphasis added). In addition, the House Standing Committee Report stated that the amended statute "would allow the department *enough flexibility* to overcome the increased demands for information in this area." H. Stand. Comm. Rep. No. 664-78, in 1978 House Journal, at 1696 (emphasis added).

Thus, it appears that the legislature intended, in adding the phrase "or the contents of any certificate," to allow DOH to save time and money by providing more flexibility over which type of document to issue. As such, the "or" in HRS § 338-13(a) must be read to allow *DOH* discretion to choose from among the three options to satisfy the request. For purposes of summary judgment, therefore, DOH satisfied its burden in showing that there is no genuine issue as to any material fact regarding Sunahara's alleged entitlement to a certified copy of the Birth Certificate under HRS chapter 338.

(2) Sunahara argues that Chapter 8B § 2.5(A) requires DOH to provide him with a certified copy of the Birth Certificate. He further argues that Chapter 8B §§ 2.1(C) and 2.1(G), read together, require DOH to provide him with physical access to the Birth Certificate to permit verification.[6]

Chapter 8B was adopted pursuant to DOH's authority under HRS § 338-2(3).[7] HAW. REV. STAT. § 338-2(3) (2010). Several provisions within Chapter 8B relate to the process by which DOH issues copies of birth certificates.

Focusing first on subsection 2.5(A) of Chapter 8B, entitled "Eligibility for Copies of Birth Certificates," Sunahara maintains that this section entitles him to access Virginia's Birth Certificate because it uses the phrase "certified copy of the original birth certificate." Haw. Admin. R. § 11-117-8B-2.5(A). On the other hand, DOH contends that subsection 2.5(B), when read in conjunction with subsection 2.5(A), gives DOH discretion to either provide a standard "certified copy of the

---

[6]    Chapter 8B § 2.1(C) and (G) provide as follows:

    C.    Individuals
        Upon written request and proper identification, the state registrar or local registrar of a registration district (county) may permit an individual to examine a certificate for the purpose of verifying an entry or correcting an error; provided that the individual is eligible to receive such information as described in Paragraphs 2.5 through 2.9 herein.

    . . .

    G.    Limitations
        Except as provided in section 2.1, all persons granted access to the vital records shall be afforded access under the supervision of a person authorized by the Director of Health.

Haw. Admin. R. §§ 11-117-8B-2.1(C), -2.1(G).

[7]    HRS § 338-2(3) provides that DOH shall "[m]ake and amend, after notice and hearing, necessary regulations, give instructions and prescribe forms for collecting, transcribing, compiling, and preserving public health statistics[.]" HAW. REV. STAT. § 338-2(3) (2010).

original birth certificate",[8] or an "[a]bbreviated copy",[9] as DOH has provided.

We begin by observing that Chapter 8B § 2.5 does not address the form that a copy or excerpt of a birth certificate must take. Instead, the section describes *who* may receive a copy or abstract. Chapter 8B §2.5 (A) states that "[a] certified copy of the original birth certificate on file . . . may be issued to[,]" and then lists a number of types of people who are authorized to receive a certified copy. Haw. Admin. R. § 11-117-8B-2.5(A). Similarly, Chapter 8B § 2.5(B) provides that "(1) [a] certified copy may be issued *to any person authorized* to receive a standard certified copy"; and that "(2) [a] non-certified copy containing only such information as is listed in accordance with Section 2.2 may be issued to *any person or organization requesting it.*" Haw. Admin. R. § 11-117-8B-2.5(B) (emphases added). While these regulations appear to contemplate the existence of both "standard" and "abbreviated" copies of birth certificates, the focus of the section is on *who* is authorized to receive those records, rather than the *form* that such records may take. Accordingly, Chapter 8B § 2.5 has no bearing on our analysis of this point.

Sunahara also argues that Chapter 8B § 2.1(C) and (G) entitle him to inspect Virginia's Birth Certificate. Neither of these subsections, however, requires DOH to give Sunahara a certified copy or allow him to inspect the Birth Certificate.

Subsection 2.1(C) states that "[u]pon written request and proper identification, the state registrar or local registrar of a registration district (county) *may* permit an individual to examine a certificate *for the purpose of verifying an entry or correcting an error . . . .*" Haw. Admin. R. § 11-117-8B-2.1(C) (emphases added). First, subsection 2.1(C) uses the word "may" when describing the procedure permitting an individual to examine

---

[8]  "Standard copies of vital records may be prepared by photographic, dry copy reproduction process or by typing." Haw. Admin. R. § 11-117-8B-2.4(B)(1)(a).

[9]  "Abbreviated copies may be prepared by typing, computer printout, or by any other process approved by the Director." Haw. Admin. R. § 11-117-8B-2.4(B)(2)(a).

a certificate. Therefore, the examination of birth records is on a discretionary basis only. *State v. Kahawai*, 103 Hawai'i 462, 465, 83 P.3d 725, 728 (2004) (quoting *State ex rel. City of Niles v. Bernard*, 372 N.E.2d 339, 341 (Ohio 1978)). Second, nowhere in the Complaint did Sunahara allege that he plans to "verify[] an entry or correct[] an error" in Virginia's Birth Certificate, as required to gain access pursuant to Chapter 8B § 2.1(C). *Id.*

Moreover, subsection 2.1(G) does not affirmatively provide for access to records, but instead is titled "limitations" and imposes restrictions on those who are granted access to vital records. Haw. Admin. R. § 11-117-8B-2.1(G). It states that "[e]xcept as provided in section 2.1, all persons *granted access* to the vital records shall be afforded access under the supervision of a person authorized by the Director of Health." *Id.* (emphasis added). Inasmuch as subsection 2.1(G) refers to an individual that has already been "granted access", it does not *establish* access. *Id.*

Accordingly, DOH did not violate Chapter 8B when it issued the Abstract rather than the Birth Certificate. Further, nothing in Chapter 8B guarantees Sunahara access to the original Birth Certificate, or the ability to be present while it is copied. Therefore, summary judgment was properly granted on Sunahara's Chapter 8B claims.

(3) Sunahara contends that Chapter 92F provides a separate basis entitling him to access, inspect, and obtain a certified copy of the Birth Certificate as a "government record." Under Chapter 92F, government records must be disclosed except where (1) access is restricted or closed by law, or (2) one of the enumerated exceptions in HRS § 92F-13 applies. HAW. REV. STAT. § 92F-11.

> Chapter 8B restricts access to vital records.
>
> Vital records authorized under Chapter 338, Hawaii Revised Statutes, are not available for or open to public inspection. Access to the records, including copies or information from them, is not permitted except as provided by law or regulations the Department of Health may promulgate.

Haw. Admin. R. § 11-117-8B-2.1(A). HRS chapter 338, as noted above, permits access, but authorizes the DOH to restrict access

to only the contents of a certificate.  Therefore, Sunahara is not entitled to any further access under Chapter 92F-11, and the Circuit Court did not err in granting summary judgment on that claim.

Therefore,

The April 13, 2012 Order Granting Defendants' Motion For Summary Judgment, Filed on January 24, 2012 (Filed as a Motion to Dismiss Complaint) and the April 20, 2012 Final Judgment as to All Claims and All Parties are affirmed.

DATED:  Honolulu, Hawai'i, May 29, 2014.

On the briefs:

John S. Carroll
for Plaintiff-Appellant.

Heidi M. Rian and
Jill T. Nagamine,
Deputy Attorneys General,
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge

8